## No. 4422.

## M. A. BECHNEL, ADMINISTRATOR, VS. THE NEW ORLEANS, MOBILE, AND TEXAS RAILROAD COMPANY.

In this case the defendants, Reynolds, Dowling & Kennedy, gave an appeal bond, but procured no order of appeal. Therefore the brief filed by their counsel will not be noticed.

The evidence is satisfactory on the point that the work done on Marmillion's plantation was done under the supervision of the engineer of the company, who had control of the matter and could have prevented the damages resulting to plaintiff, but neglected or failed to do so.

In the notarial instrument in which the right of way was granted by Widow Marmillion to the company there is a special clause, the meaning of which is that the company shall pay for all damages caused by it or its employees in constructing the road through the plantation in question. Responsibility under this contract can not be avoided by letting out the work to contractors.

The condition upon which the company obtained the right of way has been violated, and by the terms of the contract the corporation is responsible for the damages complained of. Besides, there are clauses in the contract between the company and the contractors and in the contract between the contractors and sub-contractors which fully establish that responsibility, the engineer of the company, its special agent, having the direction and constant supervision of the work embraced in the contract of the principal contractors and in the contract of the sub-contractors. Hence, the New Orleans, Mobile, and Chattanooga Railroad Company is responsible for the damages occasioned by the sub-contractor on the plantation belonging to the succession represented by plaintiff.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Cooley & Phillips*, for plaintiff and appellee. *J. A. Campbell*, for the New Orleans, Mobile, and Chattanooga Railroad Company, defendant and appellant. *John H. Ilsley*, for Reynolds, Dowling & Kennedy, defendants and appellants.

WYLY, J. Plaintiff, the administrator of the succession of Louis B. Marmillion, sues the defendants, the New Orleans, Mobile, and Chatta-

nooga Railroad Company, and Smith, Kilpatrick, Reynolds, Dowling & Kennedy, who were contractors with said company for the embankment of said railroad, for ten thousand dollars damages, which he alleges they caused the plantation belonging to the succession of Marmillion, situated in the parish of St. John the Baptist, to sustain by the improper manner in which they erected the embankment for said railroad through said plantation in 1871, and for the loss of a draining machine by fire, which occurred by the fault or neglect of said company or its employees.

Smith and Kilpatrick were not cited. At the trial the court below gave judgment for five thousand dollars *in solido* against the New Orleans, Mobile, and Chattanooga Railroad Company, and Reynolds, Dowling & Kennedy. From this judgment the New Orleans, Mobile, and Chattanooga Railroad Company has appealed.

Reynolds, Dowling & Kennedy gave an appeal bond, but procured no order of appeal. The elaborate brief filed by their counsel will not, therefore, be noticed.

Dillon, Casement & Co. were the contractors; they employed Reynolds, Dowling & Co., who sublet the contract for the work across the field or the plantation in question to O. C. Smith.

Whatever damage was done to the plantation, it was by this sub-contractor and his laborers. The evidence fails to show that the fire which destroyed the draining machine was caused by the fault or neglect of Smith or the hands employed on the railroad. At most, the evidence only creates a suspicion against them.

As to the damages resulting from excavations beyond the right of way, and the obstruction of the drainage and the plantation road, the evidence is quite conflicting. After carefully examining the evidence, we conclude that the statement of plaintiff, who testified, is correct. He, being the administrator of the estate, was without personal interest, and his estimate of tne loss seems reasonable and fair. He says that "the railroad passes through the plantation at about forty arpents from the river. The excavations were made by the employees of the railroad company a considerable distance outside of the limits of the right of way; I remonstrated frequently to them against doing so, and they promised to stop it, but did not do so, and continued the work; the earth was taken very irregularly; in some places where it was easy to dig, it was taken very deep, three or four feet; in other places very little was taken. The value of the land which was rendered useless by these excavations, outside of the right of way, was worth about four hundred dollars; the excavations alluded to are on the lower side of the road. The manner in which said excavations were made has rendered unfit for cultivation a large tract of valuable land, which can not, in consequence thereof, now be drained; had the excavations been properly made, and

an outlet provided, tho water could have been drawn off. It was not necessary that the earth should be dug in that manner, and the damage caused thereby I estimate at five hundred dollars, and no less. The plantation road was cut by the employees of the said company, which was entirely unnecessary for the purpose of constructing the road or embankment, thereby preventing communication on the place, the damage caused thereby (he estimates) at two hundred dollars."

On cross-examination this witness states: "The estimation of damages which I have given is what I consider the real and actual damages caused by the acts mentioned."

Several other witnesses, examined on behalf of plaintiff, fix the damages at a much higher sum. We will take his estimate of the loss sustained by the estate under his administration by the illegal acts of the sub-contractor and the laborers on the railroad; and we fix the amount of damages sustained by plaintiff in his representative capacity at eleven hundred dollars.

Now, the question arises, is tho New Orleans, Mobile, and Chattanooga Railroad Company responsible for these damages occasioned by this sub-contractor and the hands employed on the railroad?

Appellant takes the position that the evidence shows that no agent or servant of the company was guilty of any of the trespasses or wrongs of which the plaintiff complains; that a railroad contractor employs his own agents and servants; it is an independent employment; the direction or control of the persons so employed is entirely with their employer; and the corporation has no immediate control of them in the performance of the work, but only over the work after it is done. Therefore appellant is not responsible.

If the corporation had no control over the performance of the work, and the persons committing the wrong were not their servants or agents, of course no responsibility can be fixed on it. But the evidence satisfies us that the work was done under the supervision of the engineer of the company, who had control of the matter, and could have prevented the damages, but neglected or failed to do so. The right of way of one hundred feet in width across the plantation was conveyed to appellant in a notarial act executed by the widow of the deceased, who was then living. One clause thereof is as follows: " It being fully understood that said company bind themselves to keep open the necessary drainage, build all the necessary bridges, and pay for all the damage they may cause in the destruction of buildings, crops, and property generally; and, further, that the company be authorized and empowered to use the tract of land adjoining the road aforesaid for the ordinary purposes thereof, in hauling, carting dirt, stone, timber, iron, etc., free of costs or damage, upon condition that the said company will make no unnecessary waste, or

damage to the said tract of land." The meaning of this clause is that the company shall pay for all damages caused by it or its employees in constructing the road through the plantation in question. Responsibility for damages under this contract can not be evaded by letting out the work to a contractor. The condition upon which the company obtained the right of way has been violated, and by the terms of the contract the corporation is responsible for the damages complained of.

That there may be no mistake in regard to the finding that the work was done under the supervision of the engineer of the New Orleans, Mobile, and Chattanooga Railroad Company, and he had authority to prevent the damages complained of, but failed or neglected to do so, after being duly notified by plaintiff, we will copy a few clauses of the contract between the said company and the principal contractors, also a few clauses of the contract of the sub-contractor, Smith, who caused the damages: In the contract of the corporation with the principal contractors it was stipulated that " *all the work embraced in this contract shall be executed under the direction and constant supervision of said engineer.*" * * * Also, " *if any foreman or laborer* employed by said parties of the first part (meaning the contractors) shall *in the opinion of the engineer* execute his work in an unfaithful or unskillful manner, or in any respect prove remiss or inadequate to the performance of his duty, or disrespectful or disorderly in his conduct, *he shall forthwith by direction of said engineer be discharged;* and no person shall be employed on the work in any capacity who has been previously *discharged for like cause from any work on the said line of said railroad by said engineer.*" * * * Also, " If any damage shall be done by the parties of the first part, or by workmen in their employ, to the land, the crops, fixtures, and other appurtenances of the property adjoining or in the vicinity of the work herein contracted to be done, the said engineer of the party of the second part shall have the right to estimate or appraise the amount of said damages and to pay the same to the owner or occupant, and the amount so paid for such damages shall be deducted from the value of the work done under this contract."

And in the contract with O. C. Smith, the sub-contractor, who caused the damages complained of, it was stipulated that " *all the work embraced in this contract shall be done under the direction and constant supervision of said engineer.*" * * * * Also: " If *any foreman or laborer* of the party of the first part (meaning Smith) *shall in the opinion of the engineer execute his work* in an unfaithful or unskillful manner, or in any respect prove remiss or inadequate to the performance of his duty, or disrespectful or disorderly in his conduct, *he shall forthwith by direction of said engineer be discharged,* and no person shall be employed on the work in any capacity *who has been discharged* for

like cause from any work on the line of said railroad *by said engineer.*" * * * Also: " If any damage shall be done by the party of the first part or by workmen in his employ to the land, crops, fixtures, or any other appurtenances of the property adjoining or in the vicinity of the work herein contracted to be done, the said engineer of the party of the second part shall have the right to estimate or appraise the amount of said damages and to pay the same to the owner or occupant, and the amount so paid shall be deducted from the value of the work done under this contract." It therefore appears that the construction of the work which caused the damages to plaintiff was done under the " *direction and constant supervision*" *of the engineer of the company, who by express stipulations of the original contract and the sub-contract had authority to discharge "any foreman or laborer" employed on the railroad when in his judgment it became necessary,* and no person so discharged could be subsequently employed in any capacity on said railroad.

How, then, can it be pretended that the New Orleans, Mobile, and Chattanooga Railroad Company had no control over the hands employed on the railroad who did the damages of which plaintiff complains ? The engineer of the company, its special agent, had the " direction and constant supervision" of all the work embraced in the contract of the principal contractors and in the contract of the sub-contractor, Smith, who caused the damages. He not only had the supervision, but he had the absolute right to discharge, at his option, any foreman or laborer employed on any work on the line of railroad.

When complaint was made of the damages being done to the plantation by Smith, the sub-contractor, the division engineer wrote the following letter:

"It has been reported to me that your sub-contractor, O. C. Smith, now at work at section ten, on Widow Marmillion's plantation, has been taking earth to make the embankment across said place beyond our right of way—fifty feet each way from the centre of the line of the road—thereby subjecting this company to a claim for damages for the land so taken beyond our right of way. I am also informed that Mr. Smith assured the manager of the Marmillion place that this company would pay for the damages done by him outside of our right of way. Neither Mr. Smith nor yourselves have had permission to excavate beyond our right of way on the Marmillion place, or elsewhere, *and it is my duty to notify you,* and I do accordingly hereby notify you, to settle with the owners of the Marmillion plantation for the damages already done to the same, and that you will be held accountable for such damages in all cases."

Beyond the giving of this notice the New Orleans, Mobile, and Chatta-

nooga Railroad Company did nothing to prevent the damages to the plantation, as it was bound to do by the stipulations of the contract whereby it acquired the right of way across said plantation, and as it was bound to do by law, because it had the "direction and constant supervision" of the work, with the right to discharge any foreman or laborer at the option of its engineer.

Our conclusion is the New Orleans, Mobile, and Chattanooga Railroad Company is responsible for the damages occasioned by Smith, the subcontractor, to the plantation belonging to the succession represented by plaintiff. See the case of Camp vs. the Wardens of the Church of St. Louis, 7 An. 322.

It is therefore ordered that the judgment herein against the New Orleans, Mobile, and Chattanooga Railroad Company be amended by reducing it to the sum of eleven hundred dollars, and as ·amended that it be affirmed, appellee paying costs of appeal.